The next case on the calendar, United States v. Russell. May I proceed, Your Honor? Yes, please. Good morning, Your Honors. Kenneth Caruso. I represent Jamal Russell by appointment under the Criminal Justice Act. The District Court found that Russell was a career offender, and I challenge that because the evidence in the District Court raised a question of fact with respect to Russell's withdrawal from the conspiracy when he was arrested on state charges and jailed at Rikers Island. The statute, or I should say the guideline, forgive me, the government had the burden of proving that Russell committed the narcotics conspiracy subsequent to sustaining the convictions in the State Court. Committed subsequent to sustaining. Russell sustained the two felony convictions on January 26, 2015. So the question is whether he committed the narcotics conspiracy subsequent to January 26, 2015. But he went to jail. Can I just ask you a question, just a preliminary question on the career offender, your career offender argument? The lawyer said, were you the lawyer below? No, I was not, Your Honor. The lawyer below said, by the technical letter of the law, Mr. Russell is a career offender. Yes, he missed this withdrawal issue, which is why this review here is for plain error. He said that, but I think there's an issue here about withdrawal. So the government points to evidence that while in jail, he was threatening cooperating witness. There was e-mails that he was continuing to correspond with co-conspirators. So on a plain error, you're saying that there's still plain error? That's this? Yes. I'm saying that he's... Why wouldn't that arguably be evidence that he, even when he was in jail, continued to be part of the conspiracy? He was threatening a cooperating witness and e-mailing with co-conspirators. I think that that evidence was really pretty thin and ambiguous. But the point is, there haven't been any fact findings on that. The withdrawal, incarceration... Yes. Because there was no objection. So the question of the plain error is, could there have been any possible way, right, that there could have been an argument that he did not withdraw? Well, and I think that's an issue that would have to be explored factually. I'm sure that there are witnesses to whom the plaintiff, excuse me, to whom the defendant while he was in jail said, I'm out of this now. I mean, neither side put in evidence on that. And the reason why I'm suggesting it's plain error is because the fact of incarceration by itself is sufficient to raise a question of fact on withdrawal, standing alone. And I think that that was a big red flag in the district court, which was overlooked. You have here withdrawal 20, or at least a question of fact as to withdrawal 23 months before Russell sustained these convictions. And if he did withdraw, and it would be his burden of proof by a preponderance on the remand, at a resentencing, then he could not have sustained, he could not have committed, I should say, this offense subsequent to sustaining those two convictions. On the attribution of at least 120, but less than 196 grams of cocaine base by the district court at sentencing, was there any, there was no objection, was there? There was no objection to that either. And again, that's reviewed for plain error. But I think that the error, there was error here, and that it was plain considering the well-established case law in this circuit that recognizes, of course, sometimes quantity has to be found by an extrapolation. But the foundation for that extrapolation has to be firm and specific. And here, all we have is a single sale. It's a one, I think the statisticians would say, the sample is too small. A single sale, and the government says, well, we'll multiply that by 14 because of the 15 so-called twists in the package, and then we'll multiply that by 100 because that's our estimate of how many times he would, he must have or did sell. But there's no evidence to support that. Well, they have, Mr. Ash testified that he saw your client selling crack nearly every other day in 2011 and 2012, right? And that Ash himself sold 40 to 80 servings of crack per day. So if you extrapolate that, we're so far beyond 120 grams. Certainly can't extrapolate what Russell did from what Ash did. The case law is very clear on that. The evidence must be specific to the specific defendant. He said he saw your client selling crack in Lincoln nearly every other day for two years, right? All we have in this record now with respect to the pre-sentence investigation report is this one sale and an effort at arithmetic to say the sale was 0.1, the item that was sold was 0.1365, so we multiply that by 15 and multiply that by 100. I think the foundation is completely infirm. Is this also subject to plain error review? Yes, that issue is subject to plain error review as well. The issue that is subject to plain error review is the issue of obstruction. The judge found, Judge Woods found that the defendant obstructed justice by threatening a witness. And my position on that is that the findings of fact made by Judge Woods were entirely conclusory. There was evidence on cross-examination that impeached the witness's credibility with respect to the witness's failing to make timely reports, which leads to a lack of corroboration. And with respect to the witness having declared that he had suicidal fantasies in order to get himself into a better living situation in the jail. That at least raises the question of credibility, and it's insufficient. Don't we defer to the district court largely in that circumstance? Yes, but only if the judge makes reasoned findings. Here the judge only said, I find the witness credible. Now, a conclusory statement like that in the face of a conflicting record, under the case law, is not enough. It's not enough to permit proper appellate review. So I'm suggesting that the- Which case says that you have to go through the cross-examination to explain why any answers during the cross-examination didn't affect your review? Which case says you have to address what the defendant's lawyer is arguing are inconsistencies? That's what you're suggesting, right? You thought there were points made during the cross-examination that undermined the credibility, and the district court didn't explain why? What I'm suggesting is- There's no case that says that. No, of course not. I'm certainly not suggesting that every point raised on cross-examination has to be addressed and rebutted by the district judge when finding facts. Of course not. But here you have one major point brought out on cross. You know, the normal course would be to make a finding about that. I would like to come back to the career offender point, and perhaps I can do that on rebuttal, because I do think that it's quite an unusual situation for someone to have been held to have had a career at anything, lawful or unlawful, that starts at the age of 17 and which is what happened here, and which is what caused this sentence to be- We'll hear you on rebuttal. Thank you, Judge. May it please the court, my name is Adam Hobson, and I am an assistant United States attorney in the Southern District of New York. I represent the United States on appeal, as I did at the trial below. I'm going to start by addressing the career offender issue, which Appellant's counsel focused on in his argument. Of course, as the Court noted, the defendant did not raise this issue below. In fact, the defendant conceded to Judge Woods that, as a technical matter, Mr. Russell was, in fact, a career offender. He is raising a factual issue now for the first time in which he is saying that there might be evidence that Mr. Russell withdrew from the conspiracy. He is not saying that Mr. Russell did withdraw from the conspiracy. He is simply saying that Judge Woods should have sua sponte, called for a hearing, to investigate that issue. There is no support for that in this Court's precedent. I will note that the jury, that the time period in the indictment stated that the conspiracy ran through 2016. The evidence, the only evidence defense counsel has pointed to of the defendant's withdrawal is the fact that the defendant was incarcerated in 2015. This Court has held that that is not enough evidence to meet his burden of showing withdrawal from the conspiracy. And in addition, as the Court pointed out, the government did have evidence before the Court in which if the defendant had raised the factual issue of withdrawal, it would have showed that the defendant was continuing to communicate with members of the conspiracy while he was incarcerated. So there is certainly not plain error in showing, in the Court failing to call a hearing to determine whether or not the defendant withdrew from the conspiracy. The record supported his finding as being a career offender as the defendant admitted at trial. As for the drug weight, we disagree with the standard of review that the defendant is proposing here. Under the Court's precedent in Jass, his failure to object to a clear finding in the precedent's report means that he waived that argument. It is not on plain error. It is waived. The Court's precedent is clear on that. He had an opportunity to object to it then. As the Court noted, the precedent's report detailed the evidence that was presented at trial that supported Judge Woods's finding of weight. He chose not to object to that in the precedent's report. That constitutes a waiver and is no longer reviewable. Finally, as to the issue of witness credibility, the Court is correct that there is no opinion requiring Judge Woods to explain why he believed this particular defendant was credible. He sat through the cross-examination. He observed the witness who had testified both at trial and at the Fatico hearing, and he stated for the record that he believed that Mr. Asch's testimony was credible. That is sufficient under this Court's precedent. If there are no further questions, I will now rest on our submission. Thank you, Your Honors. Again, may it please the Court. I'm going to address only the career offender issue because, as I said when I was sitting down, I think it's so important here, considering the young age that Mr. Russell was when he committed these offenses, and indeed still is. Because, obviously, the career offender finding put the guidelines range up above the statutory maximum, and, you know, I believe, I think it's accurate to say that the cases in the Supreme Court and Molina relaxed the standard on guidelines issues with respect to plain error review. Because if the framework, I believe is the phrase in the case, if the sentencing proceeding proceeds under the incorrect guidelines framework, then that skews the entire process. So I think that the review is a little bit more relaxed than it used to be on guidelines issues. But there is a departure that would allow, to the extent it did, you know, the issues that you're pointing to with regard to what age he was, the circumstances under which they occurred, that's why there's a departure for over-representing the seriousness of the convictions, right? It's not as if, and the district court on that issue recognized that authority, too. Yes, indeed. And, obviously, there's, as a matter of law, I can't appeal from that refusal by the district judge, but I nevertheless think that the same issues are relevant to inform the analysis on the career offender issue, even though I'm not directly appealing from that. Let me just address a couple of points that the government's counsel made. He said the only evidence of withdrawal was incarceration, and that that's not enough to prove withdrawal. Of course that's not enough. I agree with that. But it is enough to raise a question of fact. This Court has said time and time again, a co-conspirator who presents evidence of imprisonment during the course of the conspiracy is entitled to a jury instruction on withdrawal. So the mere fact of incarceration raised a question of fact on withdrawal. And the way I think the burden of proof works in this case is the government initially bore the burden of proving career offender status, including that Russell committed the narcotics conspiracy subsequent to his guilty plea in state court. The government carried that burden simply by invoking a presumption that every co-conspirator is responsible until the end of the conspiracy. So the burden shifted to Russell. Russell carried his burden of going forward simply by showing incarceration, because that raised a question of fact on withdrawal. He then has the burden of persuasion by a preponderance, and there should be a hearing to allow him to try to prove that. So I think it's important to know what incarceration shows and what it doesn't. It shows, it raises a question of fact on withdrawal. It doesn't prove withdrawal, but the young man is entitled to an opportunity, I suggest, to prove that. The last point that I would make is that the point that the government proved that the conspiracy ran until 2016, which is later than my client's withdrawal. The point I suggest is irrelevant because withdrawal was not a defense on the merits in front of the jury. The pre-withdrawal date being February 5, 2013, the pre-withdrawal date evidence was sufficient to sustain the conviction. So there was no withdrawal issue at trial. But because the government then invoked this peculiar statutory or guidelines language at sentencing, the issue of withdrawal was available at sentencing, even though not available at trial. Thank you, Your Honors. Thank you. Thank you both for your arguments. The Court will reserve decision.